# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

### Case No. 5:15-cv-403-OC-41PRL

SYNNOTT DURHAM,

*Plaintiff*

v.

VERIZON WIRELESS PERSONAL
COMMUNICATIONS LP,

*Defendant*

## DEFENDANT'S MOTION TO COMPEL ARBITRATION
## AND STAY JUDICIAL PROCEEDINGS

Defendant Verizon Wireless Personal Communications LP d/b/a Verizon Wireless ("Verizon Wireless") moves for an order compelling Plaintiff to arbitrate his claims in this case and staying all proceedings pursuant to the Federal Arbitration Act ("FAA").

Based on the Terms and Conditions of the Customer Agreement through which Plaintiff received his alleged cell phone number and cell phone services with Verizon Wireless, Plaintiff is obligated to resolve this dispute with Verizon Wireless by arbitration.

### FACTUAL BACKGROUND

Plaintiff filed suit against Verizon Wireless under the Telephone Consumer Protection Act ("TCPA") and the Florida Consumer Collection Practices Act ("FCCPA") for allegedly using automatic telephone dialing equipment to call his cell phone without his consent in an attempt to collect a consumer debt. *See* D.E. 1 at ¶¶ 9, 10, 20, 23, 39-42, and 43-48.

Plaintiff fails to advise the Court, however, that the number allegedly dialed belonged to a Verizon Wireless account in the name of Plaintiff's wife,

Roswitha Durham. *See* Milbrodt Decl. at ¶ 6 (attached hereto as Exhibit A); D.E. 1 at ¶¶ 23-24. In fact, the telephone number allegedly dialed was one of 3 cellular telephone lines obtained by Roswitha Durham that received the benefit of special pricing under a Nationwide Family Share price plan with Verizon Wireless in effect since February 9, 2008. *See* Milbrodt Decl. at ¶ 7.

In addition to receiving the benefit of special pricing under the Nationwide Family Share price plan, Verizon Wireless provided the mobile telephone devices associated with Plaintiff's alleged telephone number for free to Plaintiff on December 24, 2010 and again on February 27, 2013 under a "New Every Two" redemption offer. *See* Milbrodt Decl. at ¶ 8.

With each price plan change and equipment upgrade, the account owner, Roswitha Durham, signed an agreement with Verizon Wireless accepting the Verizon Wireless Customer Agreement and acknowledging the obligation to arbitrate disputes with Verizon Wireless. Milbrodt Decl. at ¶¶ 9-10. Attached as Exhibit A-3 to the Milbrodt Decl. is a copy of the most recent *signed* acknowledgement of the obligate to arbitrate disputes on February 27, 2013, in which the account owner, Roswitha Durham, agreed:

> **I AGREE TO THE CURRENT VERIZON WIRELESS CUSTOMER AGREEMENT, INCLUDING THE CALLING PLAN...WHICH HAVE HAD THE OPPORTUNITY TO REVIEW. I UNDERSTAND THAT I AM AGREEING TO...SETTLEMENT OF DISPUTES BY ARBITRATION AND OTHER MEANS INSTEAD OF JURY TRIALS AND OTHER IMPORTANT TERMS IN THE CUSTOMER AGREEMENT.**

Milbrodt Decl. at ¶¶ 9-10 and Exh. A-3 at p. 4 (all emphasis original).

In the Customer Agreement then in effect, the account owner and Verizon Wireless further agreed to resolve disputes between them by arbitration:

---

**How Do I Resolve Disputes with Verizon Wireless?**

**WE HOPE TO MAKE YOU A HAPPY CUSTOMER, BUT IF THERE'S AN ISSUE THAT NEEDS TO BE RESOLVED, THIS SECTION OUTLINES WHAT'S EXPECTED OF BOTH OF US.**

**YOU AND VERIZON WIRELESS BOTH AGREE TO RESOLVE DISPUTES ONLY BY ARBITRATION OR IN SMALL CLAIMS COURT. THERE'S NO JUDGE OR JURY IN ARBITRATION, AND THE PROCEDURES MAY BE DIFFERENT, BUT AN ARBITRATOR CAN AWARD YOU THE SAME DAMAGES AND RELIEF, AND MUST HONOR THE SAME TERMS IN THIS AGREEMENT, AS A COURT WOULD. IF THE LAW ALLOWS FOR AN AWARD OF ATTORNEYS' FEES, AN ARBITRATOR CAN AWARD THEM TOO. WE ALSO BOTH AGREE THAT:**

(1) THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT. EXCEPT FOR SMALL CLAIMS COURT CASES THAT QUALIFY, ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS AGREEMENT OR FROM ANY EQUIPMENT, PRODUCTS AND SERVICES YOU RECEIVE FROM US (OR FROM ANY ADVERTISING FOR ANY SUCH PRODUCTS OR SERVICES) WILL BE RESOLVED BY ONE OR MORE NEUTRAL ARBITRATORS BEFORE THE AMERICAN ARBITRATION ASSOCIATION ("AAA") OR BETTER BUSINESS BUREAU ("BBB"). YOU CAN ALSO BRING ANY ISSUES YOU MAY HAVE TO THE ATTENTION OF FEDERAL, STATE, OR LOCAL GOVERNMENT AGENCIES, AND IF THE LAW ALLOWS, THEY CAN SEEK RELIEF AGAINST US FOR YOU.

                                                                                            ***

---

Milbrodt Decl. at ¶ 11 and Exh. A-4 at p. 8 of 10 (a true and correct copy of the Customer Agreement is attached to the Affidavit of Jennifer Milbrodt as Exhibit A-1) (emphasis original).

In addition to agreeing to arbitrate disputes with Verizon Wireless, Roswitha Durham, the account owner, consented to receive calls placed using a prerecorded voice or automatic telephone dialing system to any wireless phone number provided:

> You consent to allow Verizon Wireless and anyone who collects on our behalf to contact you about your account status, including past due or current charges, using prerecorded calls, email and calls or messages delivered by an automatic telephone dialing system to any wireless phone number or email address you provide.

*Id.* at 2.  One of the telephone numbers provided by Roswitha Durham was a telephone number ending in x8666 for which she was the account owner and which she listed as her "Home Number" on February 27, 2013.  Milbrodt Decl. at Exh. A-3, p. 1.

Plaintiff now claims that this same number is his, and not his wife's number.  *See* D.E. 1 at ¶¶ 23 and 26.  He claims that he "moved his cellular service from Verizon to another cellular phone carrier" on or about April 1, 2015.  *Id.* at ¶ 20.  He alleges that 53 calls allegedly received from April 9 through May 18, 2015 violate the TCPA and FCCPA.  *Id.* at ¶ 27.  Verizon Wireless' records, however, show that the telephone number belonged to Roswitha Durham and that it was ported on April 19, 2015 – after the calls alleged in the Complaint began.  Milbrodt Decl. at ¶ 12.

Notwithstanding the clear terms of the Customer Agreement with Verizon Wireless, Plaintiff filed the instant case in federal court, rather than in an arbitral forum as agreed.

## LEGAL ARGUMENT

Verizon Wireless' Motion to Compel Arbitration under the Federal Arbitration Act is straightforward.  The cellular phone number at issue in this case belonged to Plaintiff's wife under a contract with Verizon Wireless containing an arbitration agreement.    To the extent that Plaintiff claims the number was actually his, Plaintiff received a direct benefit from the contract

with Verizon Wireless, which estops him from denying his obligation to resolve this dispute with Verizon Wireless through arbitration. *See Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F. 3d 411, 418 (4th Cir. 2000) (internal quotations omitted) ("A nonsignatory is estopped from refusing to comply with an arbitration clause when it receives a direct benefit from a contract containing an arbitration clause.").

## I. FEDERAL LAW REQUIRES THAT PLAINTIFF SUBMIT HIS CLAIMS TO ARBITRATION.

The FAA applies to any written provision in any contract "evidencing a transaction involving commerce" and makes private agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  The FAA constitutes a strong and liberal federal policy favoring the enforcement of arbitration agreements.  Accordingly, U.S. Supreme Court has repeatedly held, "[t]he 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'"  *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011); *see also Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983); *Marmet Health Care Ctr., Inc. v. Brown*, 132 S. Ct. 1201, 1203 (2012) (The FAA "'requires courts to enforce the bargain of the parties to arbitrate.'").

When considering a motion to compel arbitration under the FAA, federal courts undertake a two-part inquiry.  First, the court determines whether the parties agreed to arbitrate the dispute – "a determination made by reference to the federal law of arbitrability, applicable to any arbitration agreement within the coverage of the FAA."  *Joyner v. Peerless Indemnity Ins. Co., 2010 U.S. Dist. LEXIS 58702, *3 (M.D. Fla. Jun. 14, 2010) (citing Mitsubishi Motors Corp. v. Soler*

*Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-28 (1985)).  If the Court finds that the parties agreed to arbitrate the claims, "its second task is to determine 'whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims.'"  *Id.* at *3-*4 (quoting *Mitsubishi Motors Corp.*, 473 U.S. at 628).

This second part of the inquiry is limited to whether an arbitration agreement is unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C § 2.  The party seeking to avoid arbitration bears the burden of proving that grounds exist to revoke an arbitration agreement.  *See Brown v. Dean Witter Reynolds*, 882 F. 2d 481, 482 (11th Cir. 1989) (affirming lower court decision that party opposing arbitration "failed to show cause why arbitration should not be compelled."); *Aronson v. Dean Witter Reynolds, Inc.*, 675 F. Supp. 1324, 1326 (S.D. Fla. 1987) (the party opposing a motion to compel arbitration "…has the affirmative duty of coming forward by way of affidavit or allegation of fact to show cause why the court should not compel arbitration."); *In re Wiand*, 2011 U.S. Dist. LEXIS 113212 at *15 (the burden is on party seeking to avoid arbitration "…to show that §2's escape-from-arbitration hatch applies….").

In this case, the FAA and Customer Agreement with Verizon Wireless require that Plaintiff submit this dispute to arbitration.

### A. The Account Owner Agreed to Arbitrate Disputes with Verizon Wireless.

There is no dispute that a valid, written agreement to arbitrate exists in this case.  By expressly agreeing in writing, as well as by activating service with Verizon Wireless on the terms in the Customer Agreement, the account owner,

Roswitha Durham, expressly accepted the terms of the Customer Agreement, including the agreement to arbitrate disputes.  Milbrodt Decl. at ¶¶ 3, 9-11.

Further, this matter is arbitrable under the FAA and the Customer Agreement.  Under the FAA that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone*, 460 U.S. at 24-25; s*ee also Ivax Corp. v. B. Braun of Am., Inc.* 286, F.3d 1309, 1323-24 (11th Cir. 2002) (reversing district court's denial of defendant's motion to compel arbitration).  Here, the plain language of the Customer Agreement provides that "**any dispute that in any way relates to or arises out of this agreement…will be resolved by one or more neutral arbitrators before the American Arbitration Association ("AAA") or Better Business Bureau ("BBB").**"  Milbrodt Decl. at Exh. A-4, p. 8 (emphasis original with all caps removed).

Arbitration clauses containing language such as "any dispute," "arising out of," or "relating to" are to be broadly construed and require that any doubts must be resolved in favor of arbitration.  *See, e.g., Anders v. Hometown Mortgage Services, Inc.*, 346 F.3d 1024, 1028 (11th Cir. 2003) ("The agreement could not have been any broader. Any disputes means all disputes, because 'any' means all"); *Brown v. ITT Consumer Financial Corp.*, 211 F.3d 1217, 1221 (11th Cir. 2000) (holding that the language of an arbitration provision addressing "any dispute" is "unequivocal and all encompassing"); *Gregory v. Electro-Mechanical Corp.*, 83 F.3d 382, 385-86 (11th Cir. 1996).  If the allegations underlying Plaintiff's claims "touch matters" covered by an agreement containing an arbitration clause, then those claims must be arbitrated, regardless of how they are labeled. *See Mitsubishi Motors Corp.*, 473 U.S. at 624-25 n. 13 (1985).

In this case, the allegations more than "touch matters" covered by an agreement containing an arbitration provision.  Plaintiff concedes in the Complaint that the alleged calls were for the Verizon Wireless account owner, his wife, Roswitha Durham.  *See* D.E. 1 at ¶¶ 23-24.  In addition, Plaintiff alleges that he is a "consumer" as defined in Florida Statute, § 559.55(8), which means "any natural person obligated or allegedly obligated to pay any debt" and the FCCPA itself only applies to the collection of "consumer debts," which are defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for *personal, family, or household purposes*, whether or not such obligation has been reduced to judgment."  *See* Fla. Stat. §§559.55(1), 559.55(8), 559.72, and D.E. 1 at ¶¶ 9-10. Clearly, a call to collect a debt owed for service received pursuant to the customer agreement "relates to" that agreement, as courts have routinely held. *See, e.g., Brown v. DirectTV,* Civ. No. 12-8382 DMG EX, 2013 WL 3273811, at *6 (C.D. Cal. June 26, 2013) (listing cases).

Further, the "duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights."  *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987). *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *Mitsubishi Motors Corp.,* 473 U.S. at 628l  (noting that a party to an arbitration agreement "does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum"); *see also Compucredit Corp. v. Greenwood*, 132 S. Ct. 665, 672-73 (2012); *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 88-92 (2000); *Gilmer v. Interstate/Johnson Lane*

*Corp.*, 500 U.S. 20, 35 (1991) ("It is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA."). Unless Congress has demonstrated an intention to prohibit arbitration of the statutory claim, an arbitration agreement covering the statutory claim will be enforced. *See Compucredit Corp.*, 132 S. Ct. at 668; *Shearson/Am. Express, Inc.*, 482 at 226.

Federal courts across the country have ordered arbitration of TCPA claims. *See Brown v. DirecTV*, Civ. No. 12-8382 DMG EX, 2013 WL 3273811 *6 (C.D. Cal. June 26, 2013); *Gonzalez v. Citigroup Inc.*, 2011 U.S. Dist. LEXIS 135421 *7-*8 (E.D. Ca. Nov. 23, 2011); *Powell v. Payday Loan Store of Illinois, Inc.*, 2010 U.S. Dist. LEXIS 104002, *1, *19-*20 (N.D. Ill. Sept. 28, 2010); *see also Moore v. T-Mobile USA, Inc.*, 2011 U.S. Dist. LEXIS 15051 *9-*10 (E.D.N.Y. Feb. 15, 2011).

Likewise, federal and state courts have ruled that claims under the FCCPA are arbitrable. *See, e.g., Bolanos v. First Investors Servicing Corp.*, 2010 U.S. Dist. LEXIS 11575, *5-*7 (S.D. Fla. 2010) (compelling arbitration of claims under the FDCPA and FCCPA); *see also Reeves v. Ace Cash Express, Inc.*, 937 So. 2d 1136, 1137 (Fla. 2d DCA 2006) ("…nothing in the text of section 559.77 evinces a legislative intent to preclude submission of FCCPA claims to arbitration. Consequently, such claims are not, as a matter of law, excluded from arbitration.").

In sum, the first part of the Court's inquiry under the FAA is met. Plaintiff's claims against Verizon Wireless are within the broad arbitration language in the Customer Agreement entered into between the parties in February 2013.[1]

---

[1] If Plaintiff's wife were joined as a party to this action, which remains a possibility, she would be subject to a binding arbitration clause as a signatory to the contract with Verizon Wireless.

## B. Non-Signatories to an Arbitration Agreement May be Bound by its Terms.

It can be expected that Plaintiff will argue he should not be bound by the terms of an agreement with Verizon Wireless because his wife was the account owner.  The law in Florida and the Eleventh Circuit, however, recognizes that common law principles of contract, agency, and estoppel law allow a signatory to bind a non-signatory to an arbitration agreement.  *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) ("Because 'traditional principles' of state law allow a contract to be enforced by or against nonparties through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel'...the Sixth Circuit's holding that nonparties to a contract are categorically barred from § 3 relief [under the FAA] was error.") (internal citation omitted); s*ee also World Rentals and Sales, LLC v. Volvo Construction Equip. Rents, Inc.*, 517 F. 3d 1240, 1244 (11th Cir. 2008) (finding that a non-signatory may be bound by an arbitration agreement under theories of "(1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter-ego; and (5) estoppel."); *Employers Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001) (same).[2]

Finally, federal courts around the country have found arbitration agreements binding on non-signatories under a theory of estoppel.  *See, e.g.,*

---

[2] Likewise, under common law principles of contract recognized under Florida law, it is well-established that arbitration clauses in contracts are binding on third party beneficiaries.  *See Mendez v. Hampton Court Nursing Center, LLC*, 140 So. 3d 671, 674 (Fla. 3d DCA 2014).   A "nonsignatory to an arbitration agreement may be bound to arbitrate if the nonsignatory has received something more than an incidental or consequential benefit of the contract, or if the nonsignatory is specifically the intended third-party beneficiary of the contract."  *Id*. (internal quotations omitted).

*Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F. 3d 411, 418 (4th Cir. 2000) ("A nonsignatory is estopped from refusing to comply with an arbitration clause when it receives a direct benefit from a contract containing an arbitration clause"); *World Group Sec., Inc. v. Allen*, No. CV07-1657-PHX-JAT, 2007 WL 4168572, at *3 (D. Ariz. Nov. 20, 2007) ("In the arbitration context, courts have concluded that a nonsignatory to a contract containing an arbitration clause may be *estopped* from refusing to comply with that clause *if the nonsignatory knowingly receives a 'direct benefit' from the underlying contract*," and citing several federal court cases that concur with this principle); *Washington Mutual Fin. Group, LLC v. Bailey*, 364 F. 3d 260, 267-68 (5th Cir. 2004) (holding non-signatory spouse compelled to arbitrate and citing several federal cases that have recognized the operation of the doctrine of equitable estoppel on non-signatories in an arbitration context.). The "linchpin for equitable estoppel is equity—fairness." *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 528 (5th Cir. 2000).

If Plaintiff truthfully alleges that the cell phone number ending x8666 was his, then the facts show he obtained it directly through his wife's account with Verizon Wireless, and was therefore benefitted directly from his wife's contract with Verizon Wireless. The facts show that he directly benefitted from special pricing under a Nationwide Family Share price plan with Verizon Wireless for over five years under the contract with Verizon Wireless. *See* Milbrodt Decl. at ¶¶ 6-8. The facts further show that Plaintiff directly benefitted from two free telephones under the contract in 2010 and 2013. *See id*. Clearly, Plaintiff received the benefits of the agreement with Verizon Wireless, to which the alleged calls in this case related, and under established principles

of estoppel, he is equitably estopped from denying the arbitration clause that was part of the agreement that made it all possible.

### C. There are No Legal Constraints External to the Customer Agreement Preventing Arbitration.

Pursuant to the strong federal policy in favor of enforcing arbitration agreements as written, the second part of the Court's inquiry is limited to whether the agreement to arbitrate is unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C § 2. This clause "permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, 131 S.Ct. at 1746 (internal quotations omitted). As discussed in Section I. A above, the party seeking to avoid arbitration bears the burden of proving that grounds exist to revoke an arbitration agreement. *See supra* p. 6. In this case, there is no basis at law to revoke the arbitration agreement.

## II.     THE COURT SHOULD STAY THIS ACTION PENDING ARBITRATION

Under Section 3 of the FAA, a court is required to stay litigation when any issue is referable to arbitration. *See* 9 U.S.C. § 3 ("If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.").

Because the arbitration provision in the Customer Agreement is a valid agreement to arbitrate and Plaintiff's claims are subject to arbitration under the Customer Agreement, the Court should enforce the terms of the Customer Agreement, compel arbitration, and stay this entire action pending arbitration.

<u>CONCLUSION</u>

**WHEREFORE**, Defendant, Verizon Wireless Personal Communications LP d/b/a Verizon Wireless, requests entry of an order: (i) compelling Plaintiff to arbitrate all claims in this matter in accordance with the Customer Agreement; and (ii) staying this action.

Dated: September 25, 2015                    Respectfully submitted,


/s/  Robert J. Alwine
Robert J. Alwine (Fla. Bar No. 404179)
ROBERT ALLEN LAW
1441 Brickell Avenue, Suite 1400
Miami, Florida  33131
Telephone:  (305) 372-3300
Facsimile:   (305) 379-7018
E-mail:   ralwine@robertallenlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of September 2015, a true and correct copy of the foregoing was served via CM/ECF upon:

**William Peerce Howard, Esq.**
Morgan & Morgan, P.A.
One Tampa City Center
201 N. Franklin St.
Tampa, Florida 33602

*Counsel for Plaintiff*

/s/ Robert J. Alwine
Robert J. Alwine

14